IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Criminal No: 26-mj-53 (MJD/LIB)

UNITED STATES OF AMERICA,

Plaintiff,

v.

MOHAMED ABDIRIZAK JAMA,

Defendant.

**DEFENDANTS' MOTION TO DISMISS THE MISDEMEANOR INFORMATION FOR OUTRAGEOUS GOVERNMENT MISCONDUCT AND FOR AN EVIDENTIARY HEARING**

## ARGUMENT

**I.    The Misdemeanor Information Should Be Dismissed for Outrageous Government Misconduct After the Record is Developed at an Evidentiary Hearing.**

**A.    Legal Background.**

"The Eighth Circuit has recognized that outrageous government misconduct may violate defendant's due process rights and prevent 'the government from invoking judicial processes to obtain a conviction' in cases where 'the most intolerable government conduct' has occurred." *United States v. Augustine Med., Inc.*, No. CRIM.03-321, 2004 WL 502183, at *1 (D. Minn. Mar. 11, 2004) (quoting *United States v. Pardue*, 983 F.2d 835, 840, 841–42 (8th Cir. 1993) (internal quotations omitted). Government conduct that is "so outrageous and shocking that it exceeds the bounds of fundamental fairness may violate the [Fifth Amendment] Due Process clause and bar a subsequent prosecution." *United States v. Hunt*, 171

F.3d 1192, 1195 (8th Cir. 1999) (internal quotations omitted). "Whereas the defense of entrapment focuses on the predisposition of the defendant to commit the crime, the defense of outrageous government conduct focuses on the government's actions." *United States v. Combs,* 827 F.3d 790, 794 (8th Cir. 2016) (internal quotation omitted).

The outrageous government conduct defense applies "[w]here the government essentially generates a new crime for the purpose of prosecuting it or induces a defendant to become involved for the first time in certain criminal activity, as opposed to merely interposing itself in an ongoing criminal enterprise. *United States v. Mosley,* 965 F.2d 906, 911 (10th Cir. 1992) (citing cases); *see also United States v. Boone,* 437 F.3d 829, 842 (8th Cir. 2006) (the defense applies "where law enforcement officers have sought to create crimes in order to lure a defendant into illegal activity.")

Where a defendant raises "specific facts that are sufficient to raise a significant doubt about the propriety of the government's actions," the district court should hold an evidentiary hearing to develop the facts relevant to the defendant's defense of outrageous government misconduct. *United States v. Valona,* 834 F.2d 1334, 1340 (7th Cir. 1987) (cited in *United States v. Kelley,* 152 F.3d 881, 885 (8th Cir. 1998)); *see also Augustine Med.,* 2004 WL 502183, at *1 (the Court held an evidentiary hearing on defendants' motion to dismiss alleging outrageous government conduct).

A motion to dismiss based on outrageous government misconduct must be made under Rule 12(b)(3) as a pretrial motion. *United States v. Warren*, 788 F.3d 805, 811 (8th Cir. 2015).

**B.    Border Patrol Officers Disingenuously Confused the Defendant for Someone He Looks Nothing Like and Engaged in an Unwarranted and Dangerous Vehicular Pursuit.**

The discovery produced thus far and the evidence to be elicited as part of the evidentiary hearing demonstrate that Border Patrol agents manufactured an alleged crime to justify their unjustified vehicular pursuit and warrantless arrest of the Defendant. As part of Operation Metro Surge, Border Patrol officers were randomly seeking people to arrest in the parking lot of a St. Cloud apartment complex. Border Patrol allegedly ran the license plate of the van the Defendant had driven to, and parked in the parking lot.

The United States asserts that based on license plate checks, officers identified the name of the registered owner of the vehicle, and then ran that name through the "CIS" database. Nothing in the discovery explains what identifying information (e.g., name, date of birth, height, etc.) of the alleged registered owner of the vehicle was used to query the CIS database. The discovery does contain a photograph of a smart phone showing an image of the alleged owner of the vehicle with the caption in red letters "armed and dangerous" and the suggestion that the person had refugee status.

3

The discovery further discloses that agents saw the Defendant – a U.S. citizen with no criminal history – walk out of the apartment building and get into the parked van. The reports of the officers' interviews with DHS agents suggest that the officers allegedly mistook the Defendant for the person identified in the CIS database after getting a clear look at the Defendant in broad daylight. But the Defendant and the alleged registered owner of the vehicle depicted in a photo produced in discovery *look nothing alike.* The only possible basis on which the officers believed that the Defendant was the same person depicted in the photo they viewed is that they apparently are the same race – i.e. Black or of African descent. At the evidentiary hearing, the evidence will demonstrate that the officers did not in fact mistake the Defendant for the man in the photo they viewed – they manufactured this false justification as a basis to conduct an unwarranted stop and pursuit of the Defendant.

Moreover, an evidentiary hearing will demonstrate that the Border Patrol officers did not adequately identify themselves as law enforcement officers when they first attempted to stop the Defendant. Notably, although the Border Patrol officers were wearing body cameras and had numerous cell phone cameras available, none of them recorded their attempts to stop the van while it was still in the apartment complex parking lot. The officers falsely claimed that their clothing clearly identified themselves as police, but video evidence demonstrates that none

4

of the officers had any clear police identification on the front of their clothing. The evidence will demonstrate that the Defendant had no way of knowing that the masked, armed men that allegedly yelled at him in the parking lot were in fact law enforcement officers.

Following their alleged attempts to stop the Defendant's vehicle, the officers pursued the vehicle in their unmarked rental cars, without any lights or sirens. Officers engaged in aggressive pursuit tactics, pulling up alongside the defendant's vehicle, following extremely closely, and attempting to box the van in against the curb. The officers' vehicles collided with the Defendant's vehicle. The evidence will demonstrate that the officers were acting well outside their lawful statutory and regulatory authority in engaging in this vehicular pursuit without lights and sirens, and with no legally authorized basis to seize and then arrest the Defendant.

In short, the evidentiary hearing will help demonstrate that the officers intentionally manufactured a dangerous situation designed to develop a false basis to arrest the Defendant. The caused an unnecessary and dangerous vehicular accident, and then charged the Defendant with a crime instead of admitting their own misconduct. The officers acted outside their lawful authority, selectively documented the events using their body cameras to conceal the truth, and initiated their interaction with the defendant based on his race and not any honest belief that

they had any basis to stop or arrest him. Their actions constitute outrageous government misconduct.

Dated:  March 6, 2026

**DORSEY & WHITNEY LLP**

s/ Surya Saxena

_____

Surya Saxena, Reg. No. 0339465
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402
612-340-2600

Attorneys for Defendant

6