**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Case No. 26-mj-53 (MJD/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| Mohamed Abdirizak Jama, | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636, upon Defendant Mohamed Abdirizak Jama's (hereafter "Defendant") pretrial Motion for Discovery, [Docket No. 37]. The Court held a Motions Hearing on May 4, 2026, regarding the parties' pretrial motions. [Docket No. 55].

For the reasons discussed herein, Defendant's Motion for Discovery, [Docket No. 37], is **GRANTED in part** and **DENIED in part**.

## I.     Defendant's Pretrial Motion for Discovery. [Docket No. 37].

Defendant seeks disclosure of information falling under thirteen different categories.[1] Those categories include: (1) copies of all cell phone video and body camera footage from all agents and officers related to Defendant's case; (2) criminal histories and personnel files  for each of the Department of Homeland Security (hereafter "DHS") and Customs and Border Patrol

---

[1] Defendant's Motion specifically limits the disclosure of all information sought within the specified thirteen categories to materials that "relate to any DHS, CBP, ICE, Border Patrol, or any other law enforcement officer or agent that participated in any way in the stop, pursuit, arrest, transportation, booking, release, re-arrest, interview of, or any other interaction with the Defendant in connection with these charges[.]" (Mot. for Discovery [Docket No. 37] at 1, 2). In its analysis of Defendant's discovery requests, the Court will specifically limit Defendant's requests to information related to Defendant from January 20, 2026.

(hereafter "CBP") agents; (3) DHS or CBP training records for each such DHS and CBP agent; (4) computer and cell phone browsing and search histories for each DHS and CBP agent related to Defendant from January 20, 2026;[2] (5) any and all records of any informational database reviewed, relied on, consulted, or considered by any DHS or CBP agent or other law enforcement officer;[3] (6) copies of all radio traffic, dispatch records, cell phone communications, and any other communications between or among DHS agents, CBP agents, and any other law enforcement personnel regarding the incident, and whether such data is stored on a government or private device or other storage media; (7) all documents and communications between or among DHS, CBP, the U.S. Attorney's Office for the District of Minnesota, the Department of Justice (hereafter "DOJ"), and any other law enforcement or prosecutive authorities regarding the potential or actual charging, declination, presentment, dismissal, recharging, or recharacterization of any criminal charges related to Defendant; (8) any and all photographs, text messages, emails, chats, or other cell phone data depicting any of the aforementioned law enforcement officers; (9) any and all draft affidavits prepared in anticipation of charging this matter by felony Complaint; (10) all law enforcement training records or curricula for any of the aforementioned law enforcement officers; (11) all disciplinary files, Internal Affairs files, adverse findings regarding credibility or fitness, any other adverse performance assessments for any of the aforementioned agents or officers; (12) any reports by the police, Immigration and Customs Enforcement (hereafter "ICE"), DHS, CBP, or any other law enforcement agencies regarding the events disclosed in discover or other operational goals of the agents or officers that participated in such events; and (13) any and all

---

[2] Defendant's discovery request No. 4, as written, requests information "from January 20 through the date of the Misdemeanor Information related to Defendant." (Mot. for Discovery [Docket No. 37] at 2). As stated above, however, the Court will limit Defendant's discovery requests to information related to Defendant from January 20, 2026.

[3] At the May 4, 2026, Motions Hearing, the Government denied any involvement with local law enforcement before, during, or after, the January 20, 2026, incident. (Tr. 1:58). Accordingly, to the extent Defendant's Motion seeks the disclosure of any information relating to local law enforcement, it is **DENIED as moot**.

audio, photos, videos, emails, booking and arrest records, evidence and chain of custody logs, and any documented verbal conversations related to this matter. (Mot. for Discovery [Docket No. 37] at 2–4).[4]

The Government, acknowledging its duty to disclose responsive materials and information, represented that it has complied, and will continue to comply, with its obligations under Brady, Giglio, and their progeny, as well as, Federal Rule of Civil Procedure 16(a)(1)(A)–(F). (Gov't.'s Response [Docket No. 43] at 20).

The Government objects to Defendant's Motion to the extent it seeks materials beyond the requirements of Brady, Giglio, and their progeny, as well as, Rule 16. (Id. at 20, 21). The Government further objects to Defendant's Motion to the extent it seeks disclosure of attorney work product. (Id. at 21–23).

It is well established that "[c]riminal defendants do not have a general constitutional right to discovery." United States v. Johnson, 228 F.3d 920, 924 (8th Cir. 2000) (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977)). "In most circumstances, then, a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." Id. Federal Rule of Criminal Procedure 16 requires the Government to disclose, among other things, relevant written or recorded statements or confessions made by Defendant; relevant results or reports of physical or mental examinations; and documents within the Government's possession, custody, or control that are material to preparing the defense, will be used by the Government in its case-in-chief, or documents obtained from or belonging to Defendant. See, Fed. R. Crim. P. 16(a).

---

[4] As addressed by the Court at the May 4, 2026, Motions Hearing, several of Defendant's discovery requests can be consolidated together. The Court will address Defendant's discovery requests in the following categories: (1) request Nos. 1, 4, 5, 6, 8, and 13; (2) request Nos. 2, 3, and 10; (3) request Nos. 7 and 9; and (4) request No. 12.

**A.  Defendant's Discovery Requests Nos. 1, 4, 5, 6, 8, and 13.**

Defendant's discovery requests Nos. 1, 4, 5, 6, 8, and 13 are as follows: (1) copies of all cell phone video and body camera footage from all agents and officers related to Defendant's case; (4) computer and cell phone browsing and search histories for each DHS and CBP agent related to Defendant from January 20, 2026, including all histories and search queries made on the internet, on any intranet sites available to the agents, and on any CIS, vehicle registration, driver information, or other State or Federal database, whether or not available to the public; (5) any and all records of any informational database reviewed, relied on, consulted, or considered by any DHS or CBP agent or other law enforcement officer who participated in this matter; (6) copies of all radio traffic, dispatch records, cell phone communications, and any other communications between or among DHS agents, CBP agents, and any other law enforcement personnel regarding the incident, and whether such data is stored on a government or private device or other storage media; (8) any and all photographs, text messages, emails, chats, or other cell phone data depicting any of the aforementioned law enforcement officers; and (13) any and all audio, photos, videos, emails, booking and arrest records, evidence and chain of custody logs, and any documented verbal conversations related to this matter. (Mot. for Discovery [Docket No. 37] at 2, 3).

The Government contends these requests are, generally, overbroad. However, to the extent these requests seek data relating to the January 20, 2026, incident, the Government asserts it will comply with its discovery obligations. (Gov't.'s Response [Docket No. 43] at 20, 21). The Government further contends that it has already requested that CBP produce any and all evidence, including communications, related to the January 20, 2026, incident.  (Digital Recording of the May 4, 2026, Motions Hearing, 1:53, 1:54). However, the Government, through its own

admissions and lack of production, repeatedly demonstrated that its "request" to CBP for the disclosure of relevant evidence did <u>not</u> constitute a fulsome search.

First, as to the production of video footage and body worn camera videos, as of the date of the May 4, 2026, Motions Hearing, the Government had produced only four body worn camera videos. (Digital Recording, 1:36). It is, however, undisputed that there were additional agents involved in the January 20, 2026, incident. At the Motions Hearing, the Government attested that, although efforts to obtain body work camera footage had been made, "a more formalized disclosure to the Defense indicating everybody that was there, who was wearing body cameras, and what cameras exist, or what footage exists, and what was disclosed certainly can be provided[.]" (Digital Recording, 2:01).

Second, as to the production of any and all histories and search queries made on the internet, on any intranet sites available to the agents, and on any CIS, vehicle registration, driver information, or other State or Federal database relating to the January 20, 2026, incident, the Government's production is, on its face, deficient. At the Motions Hearing, it became apparent that on January 20, 2026, DHS and CBP agents relied heavily on the "Secure Query" (hereafter "Query") results in deciding to approach the Defendant to allegedly inquire about his immigration status. While the Government produced this specific Query, the top of that Query clearly reads "1 of 3." (Gov't. Exs. 2 and 3).[5] There has been no production of, nor has the Government provided an explanation for, the content of missing pages two and three of this Query. As such, the Court, as well as the Defendant, have no way of knowing what information is included in those omitted pages. Even further, at the Motions Hearing, Defendant asserted he has yet to receive any vehicle

---

[5] Government Exhibits 2 and 3 are screenshots of page "1 of 3" of the Query which agents relied upon in approaching Defendant on January 20, 2026. (Gov't. Exs. 2 and 3). At the Motions Hearing, the Government, without objection, entered the screenshots into evidence as Government Exhibits 2 and 3. (Tr. 4:40).

registration records or the results of all of the search queries that were run. (Digital Recording, 2:02, 2:03).

Next, as to recordings of radio traffic and dispatch records, the Government was clear in asserting it was not aware what types of radio or dispatch systems, if any, were utilized on January 20, 2026. (Digital Recording, 1:53). The Government explicitly stated that it believed there was a dispatch system, but that it was "not aware" of what recording system, if any, was utilized, and that no radio communications had yet been produced. (Digital Recording, 1:53–1:55). The Court then inquired as to why none had been produced, specifically, whether the lack of production was because: (1) the Government did not locate any radio communications; (2) the Government had not yet looked everywhere for responsive radio communications; or (3) the Government simply does not know the reason why they had not yet been produced. (Digital Recording, 1:55). In response, the Government stated its lack of production was due to "a combination of all three[.]" (Digital Recording, 1:55).

Finally, as to the production of photographs, text messages, emails, chats, or other cell phone data relating to the January 20, 2026, incident, the Court specifically notes that Agent Muniz clearly testified to Agent Foster's use of a Teams chat in facilitating communication surrounding the Query search results. (Digital Recording, 3:19). The Government has, however, failed to produce any communications from this Teams chat. (Digital Recording, 3:18, 3:19).

The Court finally notes, in relation to all of the information requested under Defendant's request Nos. 1, 4, 5, 6, 8, and 13, the following relevant exchange at the Motions Hearing between the Defense and the testifying witness, Agent Muniz:

> **Defense:** Had you personally determined for yourself that you believed that the individual in this photo was in the United States illegally?
> **Agent Muniz:** Yes.

6

> **Defense:** And was that based exclusively on the information that is in [Gov't. Exs. 2 and 3]?
> . . . .
> **Agent Muniz:** Yes . . . they also confirmed from somewhere else on the Teams chat.
> **Defense:** You don't know who that was?
> **Agent Muniz:** No there was[sic] multiple people sending different people on that chat.
> **Defense:** Okay, and we have no record of that, right?
> **Agent Muniz:** It's on our Government phones.
> **Defense:** Okay, but you did not provide it to the prosecutor when the prosecutor asked you to provide everything related to this incident to him, right?
> **Agent Muniz:** I was not asked to provide my phone, no.
> **Defense:** You were not asked to provide everything related to this incident?
> **Agent Muniz:** Not my Government phone.
> **Defense:** You weren't asked to provide any information on your Government phone?
> **Agent Muniz:** No.

(Digital Recording, 3:18). Given the testifying witness was not asked to participate in the discovery process, the Court can reasonably infer that the Government did not ask <u>any</u> of the agents involved in the January 20, 2026, incident to search for and produce responsive information.

In sum, it is abundantly clear that the Government failed to conduct a fulsome search for information responsive to Defendant's discovery request Nos. 1, 4, 5, 6, 8, and 13. (Gov't.'s Ex. 2 and 3; 1:53–1:55, 2:01–2:03, 3:18).[6]

Accordingly, Defendant's Motion for Discovery, [Docket No. 37], insofar as it requests the disclosure of information responsive to Defendant's discovery request Nos. 1, 4, 5, 6, 8, and 13, is **GRANTED**. The Government shall conduct a fulsome search for all responsive information relating to Defendant's discovery request Nos. 1, 4, 5, 6, 8, and 13. The Government must explain what it looked for, where it looked for it, and what it found. Further, if the Government discovers

---

[6] Failure to conduct a fulsome search going forward, as past failures are evidenced here, may result in future recommendations for adverse instructions.

that responsive information has been deleted or otherwise removed, it must explain when that information was deleted or removed and for what purpose.

The Government shall disclose any subsequently acquired materials or information that are specifically responsive to Rule 16 to the Defense as soon as said responsive materials are discovered by the Government and, in any event, no later than within twenty-one (21) days from the date of this Order. The Government shall also disclose any and all remaining or subsequently discovered, obtained, or obtainable material responsive to Brady as soon as said as said responsive materials are discovered by the Government.[7]

### B. Defendant's Discovery Request Nos. 2, 3, and 10.

Defendant's discovery request Nos. 2, 3, and 10 are as follows: (2) criminal histories and disciplinary records for each of the DHS and CBP agents; (3) DHS or CBP training records for each such DHS and CBP agent; and (10) all law enforcement training records or curricula for any of the aforementioned law enforcement officers. (Mot. for Discovery [Docket No. 37] at 2, 3).

To the extent these requests seek disclosures related to the January 20, 2026, incident, the Government agrees to satisfy its continuing discovery obligations under Federal Rule of Criminal Procedure 16, Brady, Giglio, and their progeny. (Gov't.'s Response [Docket No. 43] at 24). The Government objects to these requests to the extent they exceed the scope of its obligations under Federal Rule of Criminal Procedure 16, Brady, Giglio, and their progeny. (Id.).

---

[7] The Court notes that, in Kyles v. Whitley, 514 U.S. 419 (1995), the United States Supreme Court "emphasized the discretion of the prosecutor, not the trial judge, in deciding what evidence is producible under Brady." United States v. Garrett, 238 F.3d 293, 304 n.4 (5th Cir. 2000) (emphasis added). The Sixth Circuit has also explained that "while the Brady rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." United States v. Clark, 957 F.2d 248, 251 (6th Cir. 1992). That being said, "[i]f [the Government] fails to comply adequately with a discovery order requiring it to disclose Brady material, it acts at its own peril." Id. Accordingly, the Court encourages the Government to carefully evaluate the materials in its possession in light of a liberal understanding of its Brady obligations. However, a defendant should not view the granting of their Motions in any way as this Court expanding the Government's disclosure obligations beyond the scope required by Brady, Giglio, and their progeny.

Defendant's Motion for Discovery, [Docket No. 37], to the extent it seeks disclosure of information responsive to Defendant's discovery request Nos. 2, 3, and 10, is **GRANTED in part** and **DENIED in part**, as set forth herein. Defendant's Motion is **GRANTED** insofar as it requests the disclosure of any material responsive to Giglio and related to the impeachment of the Government's witnesses to be called at trial. The Government shall disclose any material responsive to Giglio and related to the impeachment of the Government's trial or hearing witnesses by no later than seven (7) days before (a) trial or (b) when the presiding trial judge requires disclosure of the Government's witness list, whichever is earlier.[8]

Defendant's Motion is **DENIED** insofar as it requests all criminal histories; disciplinary records; training records; or curricula for each DHS and CBP agent involved in the January 20, 2026, incident. These requests seek information the Government is not required to disclose under Rule 16, and Defendant presents no other basis to warrant the discovery of such information.

### C. Defendant's Discovery Request Nos. 7 and 9.

Defendant's discovery request Nos. 7 and 9 are as follows: (7) all documents, communications, phone records, text messages, chats, emails, transmittals, and any other exchange of information between or among DHS, CBP, the U.S. Attorney's Office for the District of Minnesota, the DOJ, and any other law enforcement or prosecutive authorities regarding the potential or actual charging, declination, presentment, dismissal, recharging, or recharacterization of any criminal charges related to Defendant; and (9) any and all draft affidavits prepared in

---

[8] The Government's disclosure of materials responsive to Giglio and related to the impeachment of the Government's witnesses to be called at trial shall include the criminal history, if any, for each trial witness. The Court additionally notes that this information, as it pertains to Agent Muniz, should have been produced prior to the May 4, 2026, Motions Hearing, at which Agent Muniz testified. No such production was made, nor is it even clear if any Giglio inquiry was conducted relative to Agent Muniz prior to the May 4 hearing. As such, the Government is ordered to disclose materials responsive to Giglio and specifically related to the impeachment of Agent Muniz within seven (7) days of the date of this Order.

anticipation of charging this matter by felony Complaint. (Mot. for Discovery [Docket No. 37] at 3).

The Government objects to these requests as seeking information protected by the attorney work product doctrine. (Gov't.'s Response [Docket No. 43] at 21–23).

The attorney work product doctrine was first articulated in <u>Hickman v. Taylor</u>, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451, (1947), and later expressed in Fed. Rule Civ. P. 26(b)(3)(A), which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered ... if ... the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A); <u>see</u>, <u>Johnson v. Bd. of Pensions of the Evangelical Lutheran Church</u>, No. 11-cv-23 (MJD/LIB), 2012 WL 5985600, at *5, 2012 U.S. Dist. LEXIS 174230, at *14 (D. Minn. Sep. 5, 2012).

The work product doctrine extends to criminal, as well as civil, discovery. <u>See</u>, <u>United States v. Nobles</u>, 422 U.S. 225, 236–40 (1975). As such, the Government need not disclose items protected by the work-product doctrine. <u>See</u>, <u>Nobles</u>, 422 U.S. at 236–40 (1975); <u>see</u> <u>also</u> Fed. Rule Crim. P. 16(a)(2). Rule 16 specifically protects from the disclosure of "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. Rule Crim. P. 16(a)(2).

Any documents or communications between or among DHS, CBP, the U.S. Attorney's Office for the District of Minnesota, the DOJ, and any other law enforcement or prosecutive

authorities regarding the potential or actual charging, declination, presentment, dismissal, recharging, or recharacterization of any criminal charges related to Defendant, or any drafts prepared in anticipation of charging this matter by felony Complaint, are undoubtedly protected by the attorney work product doctrine. See, United States v. Wirth, No. 11-cr-256 (ADM/JJK), 2012 WL 1110540, at *4 (D. Minn. Apr. 3, 2012) (citing Fed. Rule Crim. P. 16(a)(2)).

Accordingly, Defendant's Motion for Discovery, [Docket No. 37], to the extent it seeks disclosure of information responsive to Defendant's discovery request Nos. 7 and 9, is **DENIED**. This does not, however, alter the Government's obligations under Brady. The Government must still disclose any and all remaining or subsequently discovered, obtained, or obtainable material responsive to Brady as soon as said responsive materials are discovered by the Government.

### D.  Defendant's Discovery Request No. 12.

Defendant's discovery request No. 12 is as follows: (12) any reports by the police, ICE, DHS, CBP, or any other law enforcement agencies regarding the events disclosed in discovery or other operational goals of the agents or officers that participated in such events. (Mot. for Discovery [Docket No. 37] at 3).

The Government, initially, asserted it had produced all reports generated in relation to the January 20, 2026, incident. (Digital Recording, 1:59). However, when the Court specifically inquired as to whether the Government was certain that none of the agents involved in the January 20, 2026, incident, authored any of their own reports, the Government affirmed it had made requests as to the existence of that information, but that it's assertion came with a "caveat," and that further "endeavors" would be undertaken to ensure all relevant reports are produced. (Digital Recording, 2:00).

Accordingly, given any law enforcement reports drafted regarding the January 20, 2026, incident, are specifically responsive to Rule 16, and the Government does not argue otherwise, Defendant's Motion for Discovery, [Docket No. 37], insofar as it requests information responsive to Defendant's discovery request No. 12, is **GRANTED in part**, and **DENIED in part**, as set forth herein. Defendant's Motion is **GRANTED** insofar as it requests the disclosure of any reports by ICE, DHS, CBP, or any other law enforcement agencies relating to the January 20, 2026, incident. The Government shall disclose any subsequently acquired materials or information that are specifically responsive to Rule 16 to the Defense as soon as said responsive materials are discovered by the Government and, in any event, no later than within twenty-one (21) days from the date of this Order.

Defendant's Motion is **DENIED** insofar as it requests disclosure of any reports relating to the operational goals of the agents or officers that participated in such events as the Government is not required to disclose any such "reports" under Rule 16, and Defendant presents no other basis to warrant the discovery of such "reports."

## II.    Conclusion

Therefore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendant's Pretrial Motion for Discovery, [Docket No. 37], is **GRANTED in part** and **DENIED in part**, as set forth herein.

Dated: May 18, 2026                                          s/Leo I. Brisbois
                                                                      Hon. Leo I. Brisbois
                                                                      U.S. MAGISTRATE JUDGE

12