UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-MJ-53 (MJD/LIB)

UNITED STATES OF AMERICA,

Plaintiff,

v.

MOHAMED ABDIRIZAK JAMA,

Defendant.

**UNITED STATES' OBJECTION TO THE REPORT AND RECOMMENDATION**

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and LeeAnn K. Bell, Assistant United States Attorney, hereby files its objections to the Report and Recommendation ("R&R"). (DCD 74). Although, the United States does not take issue with the ultimate finding that the case should be dismissed with prejudice – in fact, it requested that relief – the United States Attorney's Office does object to certain portions of the R&R.

The United States Attorney's Office takes its discovery obligations seriously. In fact, it takes them so seriously, that when it cannot comply with them, it must dismiss the case. Furthermore, the United States takes seriously its obligations to scrutinize the evidence. If the United States cannot obtain fulsome discovery from an agency or finds issues with the evidence, it must dismiss. That is what happened here. The United States Attorney's Office objects to any suggestion that its prosecutors were anything but diligent in their efforts to obtain discovery. Contrary to the conclusions in the R&R, the reason the United States Attorney's Office moved to dismiss was precisely because it was unable to comply with the

Court's order, and because the evidence that was produced indicated that the registered owner was a legal U.S. citizen, and thus, the only available ethical option was to move to dismiss the case in the interests of justice.

Furthermore, the United States objects to the findings regarding the credibility of Special Agent Berger. SA Berger appropriately relied upon information provided to him by fellow law enforcement officers in his affidavit and his affidavit was true and accurate to the best of his knowledge at the time he submitted it to the court. Finally, the United States objects to the findings regarding the credibility of Border Patrol Agent Muniz.

## DISPUTED FACTS

The procedural background with respect to discovery is well described in the R&R. The Court ordered discovery be produced by February 20, 2026. The United States does not dispute that it was not complete, but does dispute that it was anything less that diligent in trying to obtain discovery. Following the May 4, 2026, hearing on Defendant's pretrial motions, on May 18, the Court issued a further Order regarding discovery, requiring compliance by June 8, 2026. The United States Attorney's Office produced everything it had on June 8, but learned that same day that there were additional materials it did not have. On June 10, 2026, the United States filed a motion to "dismiss with prejudice in the interests of justice." DCD 63.

On September 1, 2026, the Magistrate Judge held a hearing on the motion to dismiss. At that hearing, the United States took the position that because both parties agreed that the motion to dismiss with prejudice should be granted, there was no live controversy and thus, no need for further factual findings. DCD 70 at 2.

Ultimately, the Magistrate Judge disagreed and decided that factual findings were required. However, because it was the United States' position that the factual findings were unnecessary, no additional evidence was presented. Thus, the R&R concluded that it was "reasonable to infer" that the lack of production of discovery was the result of lack of diligence by the United States Attorney's Office and that it was reasonable to infer that the motion to dismiss was filed in order to avoid it's discovery obligations. DCD 74 at 19. Those inferences were incorrect and it is not right that they stand.

For a variety of reasons, the United States Attorney's Office does not typically share its internal processes with the Court, the defense or the public. However, given the allegations here, the United States has no choice, but to share some limited information. As the Court is aware, the United States Attorney's Office can only produce discovery that is provided to it by the relevant agencies. Although we can request discovery, we rely on the agencies to provide it. Here, although the undersigned was not assigned this matter and only had some peripheral involvement due to her training role, the undersigned has reviewed office emails to determine the steps taken by the assigned attorneys and supervisors.[1]

Two days after the May 18 hearing, on May 20, 2026, SAUSA William Richards sent email requests to both ICE and CBP requesting discovery. In doing so, he attached the May 18 Order, as well as a detailed letter explaining the details of the Order. Per SAUSA Richards, in addition to those two requests, he made no less than 12 requests to the agencies to obtain

---

[1] Should the Court desire, the United States will provide a copy of the emails to the court ex *parte* and *in camera* for the Court's review. The United States is not waiving it's work product privilege.

fulsome discovery. When he was not able to obtain discovery to his satisfaction, he sought assistance from then-Criminal Chief, Kristian Weir. As set forth in a series of emails in August 2026, authored by then-Criminal Chief Weir, the reason the case was dismissed was twofold. First, the U.S. Attorney's Office was unable to obtain the necessary information from the agency to comply with the Court's discovery Order. Second, the additional evidence received showed that the registered owner of the vehicle was lawfully in the country, and thus there was no legal basis to stop the vehicle.[2]

With respect to the claim that the various database checks were "three hours" before the stop (DCE 74 at 10 (emphasis in original)), the R&R does not address the various time zones at play. Contrary to the conclusions in the R&R, all of the events took place within minutes. The initial CIS inquiry that came back "Armed and Dangerous" showed a time stamp on the phone at 11:20am. *See* Def. Ex. 1. The 9:15am and 9:20am Teams chat timestamps raised by the R&R – which the evidence shows were done after the return of the CIS inquiry – were likely from someone on Pacific Time, and thus, it was 11:15am and 11:20am local time. *See* Def. Ex. 3. And, the 12:22pm timestamp on the body cam footage shows the time as "-0500," meaning the bodycam was set to east coast time, so it was actually at 11:22 local time.[3] *See* Def. Ex. 2. Indeed, BPA Muniz's body camera footage shows that

[2] To be clear, the legality of the stop would not necessarily prevent a prosecution for assault on a federal officer, but the United States decided it would not move forward.

[3] UTC or Coordinated Universal Time is used and then time zones are offset (either positive, zero or negative offsets). For Minnesota, UTC is either -0600 for standard time or -0500 during daylight savings time. In January, Minnesota is on Standard time.

at 12:22:16 -0500 (11:22:16 Central) he was using a cell phone while his team followed the white van. May 4, 2026, GE 3 at 0:10.



While the text of the photos cannot be deciphered in the body-worn camera imagery, it is possible to see that the photos are themselves of a hand holding a cellphone. These appear to be the same CIS inquiries depicted in Government Exhibits 1 and 2 from the May 4, 2026, hearing. This supports BPA Muniz's account of the events. He received Teams messages at 11:15 am and 11:20 am with the CIS inquiry reporting "armed and dangerous." Based on this concerning report, he activated his body camera at 11:22 am as the officers tailed the white van. Thus, there were no false statements about the timing of the events and the Court should reject that claim in the R&R.[4]

Second, the R&R concludes that the BPA Muniz's testimony that he did not recall himself or his colleagues taking "selfie photographs" while transporting Mr. Jama somehow

[4] The Court also found that there was inconsistent testimony about whether officers attempted to box in the van before or after the collision. At best, the record is confusing on this point.

contributes to the conclusion that BPA Muniz committed perjury. However, a failure of recollection is not the same as making a false statement.

Finally, the R&R comments on the accuracy of the Secure Query system itself. Whether there are issues with the system is not going to be resolved here. However, to the extent that there is an issue with the system that is not the fault of the officers and it is certainly not a basis to make any credibility finding against them.

## ARGUMENT

### I. THE COURT SHOULD REJECT THE FINDINGS THAT THE UNITED STATES ATTORNEY'S OFFICE WAS NOT DILIGENT IN PURUSING THIS CASE.

The Court should reject the R&R's findings regarding the diligence by the U.S. Attorney's Office to obtain discovery. The SAUSAs and supervisors who worked on this case made extraordinary efforts to obtain discovery, and when it became clear that the United States was not able to comply with the Court's order, it produced the discovery it had received and moved to dismiss the case. Thus, the finding that any SAUSA or AUSA was less than diligent should be rejected, as well as any finding that the case was dismissed to prevent disclosure. Both findings are contradicted by the contemporaneous emails.

### II. THE COURT SHOULD REJECT THE FINDINGS THAT SPECIAL AGENT BERGER'S RELIANCE ON INFORMATION PROVIDED BY LAW ENFORCEMENT RESULTED IN MISCONDUCT.

Special Agent Berger's involvement in this case was limited to preparing the Complaint affidavit. He was not present at the time of the events in question, and thus, he relied on information provided to him by those law enforcement officers who were involved. This is a universally accepted standard practice for law enforcement officers to rely on the

statements of fellow officers in the course of swearing out affidavits. SA Berger's affidavit was true and correct to the best of his knowledge at the time it was sworn to and submitted to this court. As discussed above, any inconsistencies and discrepancies identified in the R&R between the discovery material, BPA Muniz's testimony, and SA Berger's affidavit may well be misunderstandings and misapprehensions by the Magistrate Judge. Even assuming that the testimony provided to the court at the May 4, 2026, motions hearing by BPA Muniz was inconsistent with his statements to SA Berger in January 2026, as SA Berger prepared his affidavit, any lack of such knowledge or foresight cannot be ascribed to SA Berger. It is certainly not SA Berger's fault that he relied on the information provided to him at the time in preparing the affidavit for the Compliant and it is inaccurate and misleading for his honesty and integrity to be called into question by the R&R.

## III. THE COURT SHOULD NOT ADOPT THE FINDINGS RELATED TO THE TIMING OF THE TEXTS, TEAMS CHATS OR BODY CAMERA.

The main thrust of the R&R's conclusion that BPA Muniz was untruthful was the timing of the Teams chat and the BWC. However, the records show that the events took place around 11am just as the agent testified. In light of this, the court's extraordinary finding that BPA Muniz likely perjured himself is not supported.

Dated: November 16, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/ LeeAnn K. Bell*
BY: LEEANN K. BELL
Assistant U.S. Attorney
Attorney ID No. 318334